JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GECCMC 2005-C1 PLUMMER STREET OFFICE LIMITED PARTNERSHIP, a Delaware limited partnership, | Case No.  2:10-cv-01615-JHN-SHx |
| | **ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT** |
| Plaintiff, | Judge: Honorable Jacqueline H. Nguyen |
| vs. | |
| JPMORGAN CHASE BANK, National Association | |
| Defendant. | |

The matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint ("Motion") (Docket No. 13), filed on May 17, 2010.  Upon consideration of the briefs filed in this matter, the Court previously deemed the matter appropriate for decision without oral argument and took the matter under submission.  *See* Fed. R. Civ. P. 78(b); Local Rule 7-15.  For the reasons herein, the Court GRANTS the Motion.

///

///

///

# I.

## BACKGROUND

On March 4, 2010, Plaintiff GECCMC 2005-C1 Plummer Street Office Limited Partnership ("Plaintiff" or "GE") filed this action against Defendant JP Morgan Chase Bank ("Defendant" or "JPMC") alleging breach of a lease on two properties and seeking a Declaratory Judgment in its favor.  (Docket No. 1.) Jurisdiction of this Court is proper on the basis of diversity.  (Compl. ¶ 1.) Plaintiff filed an Amended Complaint ("FAC") on April 20, 2010.  (Docket No. 10.)  On May 17, 2010, Defendant filed the instant Motion and supporting Memorandum to Dismiss Plaintiff's Amended Complaint, as well as a Request for Judicial Notice in support of its Motion.  (Docket Nos. 13, 15.)  Plaintiff filed an Opposition, including its own Request for Judicial Notice.  (Docket Nos. 19, 22.)  Defendant filed a Reply, a Request for Judicial Notice in support of its Reply ("Reply RJN"), and an Opposition to Plaintiff's Request for Judicial Notice.  (Docket Nos. 30, 31, 33.)

The dispute involves two parcels of Los Angeles real estate that were leased to Washington Mutual Bank ("WaMu") prior to its closure as a "Failed Bank" on September 25, 2008.  (FAC ¶ 22; Mem. 3.)  Upon WaMu's failure, and pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), the Federal Deposit Insurance Corporation ("FDIC") became the Receiver for WaMu.  (Mem. 3.)  As Receiver, the FDIC was empowered to contract with financially stable banks in order to minimize the effects of WaMu's failure on depositors and the nation's economy.  (*Id*.) (citing Federal Deposit Insurance Act, 12 U.S.C. §§ 1811–33e.)  On the same day as WaMu's failure, the FDIC entered into a Purchase and Assumption Agreement ("PAA") with Defendant, whereby the latter agreed to assume a number of WaMu's assets and liabilities.  (Mem. 5.)  Under the PAA, JPMC had an exclusive 90-day option period during which it could elect to accept or reject assignment of leases for

1   "Bank Premises." (*Id*. at 7; Def. RJN Ex. B § 4.6(a).)

2      The properties at issue in this case are located on Oakdale Avenue and

3   Plummer Street in Los Angeles, California. (FAC ¶ 2.) Plaintiff acquired title to

4   both properties at a nonjudicial foreclosure sale on September 17, 2009. (*Id*. at ¶¶

5   6, 14.) According to GE's Prospectus Supplement, WaMu used the Oakdale and

6   Plummer properties for "Account Services and Asset Review" and "Investor

7   Reporting and Financial Control," respectively. (Def. RJN Ex. C at 58.) The

8   Plummer property was also used as a "Telephone and On-Line Banking Call

9   Center." (*Id*.)

10      Plaintiff alleges that, as part of the general conveyance of assets and

11   liabilities set forth in the PAA, JPMC assumed responsibility for the Oakdale and

12   Plummer leases. (FAC ¶¶ 24, 31.) Defendant counters that, pursuant to Section

13   4.6 of the PAA, it had an exclusive option to assume the subject leases and that it

14   declined to exercise that option. (Mem. 7.) However, Plaintiff argues that the

15   Oakdale and Plummer properties were not "Bank Premises," within the meaning

16   of the PAA, and consequently did not fall within the purview of Section 4.6.

17   (FAC ¶¶ 35–36; Opp'n 7–8.) Plaintiff first contends that the leases should have

18   been characterized as secured debt, assumed in full by JPMC under the PAA, and

19   alternatively, as "Other Real Estate" not subject to the PAA's option for leases of

20   "Bank Premises." (Opp'n 6–7.)

21                                     **II.**

22                          **LEGAL STANDARD**

23      Rule 12(b)(6) permits a defendant to seek dismissal of a complaint that

24   "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P.

25   12(b)(6). In evaluating a motion to dismiss, the Court generally cannot consider

26   material outside the complaint, such as facts presented in briefs, affidavits, or

27   discovery materials, unless such material is alleged in the complaint or judicially

28   noticed. *McCalip v. De Legarret*, No. CV-08-2008, U.S. Dist. LEXIS 87870, at

1   *4 (C.D. Cal. Aug. 18, 2008); *see Jacobson v. AEG Capital Corp.*, 50 F.3d 1493,

2   1496 (9th Cir. 1995).  The Court must accept as true all material factual

3   allegations in the complaint and construe them in the light most favorable to the

4   plaintiff.  *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d

5   1226, 1229 (9th Cir. 2004).  However, this tenet is inapplicable to legal

6   conclusions.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  The Court need not

7   accept as true "[t]hreadbare recitals of the elements of a cause of action,

8   supported by mere conclusory statements..."  *Id.*  The Court, based on judicial

9   experience and common-sense, must determine whether a complaint plausibly

10   states a claim for relief.  *Id.* at 1950.

11                                 **III.**

12                          **DISCUSSION**

13   **A.    Judicial Notice**

14        Defendant filed a Request for Judicial Notice pursuant to Federal Rule of

15   Evidence 201.  (Docket No. 15.)  Defendant seeks judicial notice of the following

16   documents:

17      1.   <u>Exhibit A</u>: The Failed Bank List issued by the Federal Deposit
             Insurance Corporation ("FDIC"), as found on the FDIC's website at
18           http://www.fdic.gov/bank/individual/failed/banklist.html.
        2.   <u>Exhibit B</u>: The Purchase and Assumption Agreement entered into by
19           the FDIC and JPMorgan Chase on September 25, 2008.
        3.   <u>Exhibit C</u>: Excerpts from the Prospectus Supplement to Prospectus
20           Dated January 28, 2005, filed pursuant to Rule 424(b)(5) of the
             Securities Act of 1933 of Plaintiff GE Capital Commercial Mortgage
21           Corporation, GECCMC 2005-C1 Plummer Street Office Limited
             Partnership, as found on the U.S. Securities and Exchange
22           Commission's website at
             http://www.sec.gov/Archives/edgar/data/1215087/000093041305000
23           587/c35224_424b5.txt.
        4.   <u>Exhibit D</u>: The Complaint filed by GE against the FDIC in the United
24           States District Court, District of Columbia, on April 5, 2010.
        5.   <u>Exhibit E</u>: The Complaint filed by GE against the borrower on the
25           properties at issue in this action NRFC Sub Investor IV, LLC and
             guarantor NRFC NNN Holdings, LLC, in the Superior Court of the
26           State of California, County of Los Angeles, on August 10, 2009.
        6.   <u>Exhibit F</u>: The March 8, 2010 Order by the United States Court of
27           Appeals for the Fifth Circuit granting leave to appeal from the
             interlocutory order of the United States District Court of the Western
28           District of Texas, Austin, entered on February 5, 2010 in the matter

                                     4

1    *of 290 at 71, LLC v. JPMorgan Chase Bank, N.A.*

2    (Def. RJN 1–2.)

3        Plaintiff has not opposed Defendant's Request for Judicial Notice and does

4    not dispute the accuracy of these documents.  The Court finds that these

5    documents (Exhibits A–F) constitute matters appropriate for judicial notice, as

6    they are capable of accurate and ready determination by resort to sources whose

7    accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  Accordingly,

8    the Court GRANTS Defendant's Request for Judicial Notice.

9        Defendant has additionally filed a Request for Judicial Notice in Support

10   of its Reply of the following documents:

11       1.   Exhibit A: The United States District Court, Western District of
            Texas, Austin Division, Order in *290 at 71, LLC v. JP Morgan
12          *Chase Bank, National Association*, Case No. A-09-CA-576-SS,
            certifying the decision as an interlocutory decision, dated February
13          1, 2010

14       2.   Exhibit B: The United States Court of Appeals for the Fifth Circuit's
            Order, dated March 8, 2010, granting leave to appeal from the
15          Western District of Texas' interlocutory decision in *290 at 71, LLC
            v. JP Morgan Chase Bank, National Association*, Case No. A-09-
16          CA-576-SS.

17   (Reply RJN 1.)

18       Plaintiff has not opposed Defendant's Request for Judicial Notice and does

19   not dispute the accuracy of these documents.  The Court finds that the

20   information in these documents constitutes matter appropriate for judicial notice,

21   as it is capable of accurate and ready determination by resort to sources whose

22   accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  Accordingly,

23   the Court GRANTS Defendant's Request for Judicial Notice in Support of its

24   Reply as to Exhibit A and B, the latter of which is duplicative of Exhibit F in

25   Defendant's first Request for Judicial Notice.

26       Plaintiff also filed a Request for Judicial Notice pursuant to Federal Rule

27   of Evidence 201.  (Docket No. 22.)  Plaintiff seeks judicial notice of the

28   following documents:

1.   Exhibit 1: The Plummer Street Lease, described in more detail as Lot 18 Tract 26561 Lease between Chatsworth Associates, as Lessor, and Great Western Savings, as Lessee, dated as of November 11, 1983.

2.   Exhibit 2: The Oakdale Avenue Lease, described in more detail as Lot 16 – Tract 26561 Lease between Valley Associates I, as Lessor, and Great Western Savings, as Lessee, dated as of July 30, 1985.

3.   Exhibit 3: Defendant JPMorgan Chase Bank, National Association's Motion for Summary Judgment filed in the matter of *290 at 71, LLC v. JPMorgan Chase Bank, National Association, et al.*, United States District Court for the Western District of Texas, Austin Division, Case No. 09-CV-00576-SS, 2009 WL 4052406 (W.D.Tex.).

4.   Exhibit 4: Findings and order on motion for summary judgment in the matter of *290 at 71, LLC v. JPMorgan Chase Bank, National Association, et al.*, United States District Court for the Western District of Texas, Austin Division, Case No. 09-CV-00576-SS, 2009 WL 3784347 (W.D.Tex.).

5.   Exhibit 5: Opening Statement of Senator Carl Levin (D-Mich) Before the U.S. Senate Permanent Subcommittee on Investigations, *Wall Street and The Financial Crisis: The Role of Bank Regulators*, April 16, 2010, available at http://hsgac.senate.gov/public/index.cfm?FuseAction=HearingsHearing&Hearing_ID=455470c7-f48b-422c-a416-e210f3619633.

6.   Exhibit 6: Order in *King v. Long Beach Mortgage Co.*, Civ. Action No. 06-11931-WGY (D. Mass. 2009).

7.   Exhibit 7: FDIC 2009 Annual Performance Plan, Receivership Management Program, available at http://www.fdic.gov/about/strategic/performance/2009/rcvrship.html

8.   Exhibit 8: FDIC, *Managing the Crisis: The FDIC and RTC Experience*, at 211 (1998), available at http://www.fdic.gov/bank/historical/managing/history1-08.pdf.

9.   Exhibit 9: Washington Mutual Bank – Receivership Balance Sheet Summary (Unaudited), revised 5/24/2010, available at http://www.fdic.gov/bank/individual/failed/wamubalsheet.html.

10.  Exhibit 10: The Order in *Perrey v. Televisa S.A. de C.V. et al.*, No. 2:09-cv-06508-JHN-RZ, at 10 (C.D. Cal. Mar. 25, 2010).

(Pl. RJN 1–2.)

Defendant has not opposed Exhibits 1–4, 6, and 10 of Plaintiff's Request for Judicial Notice and does not dispute the accuracy of these documents.  The Court finds that these documents (Exhibits 1–4, 6 and 10) constitute matters appropriate for judicial notice, as they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b)

Defendant has opposed Exhibits 5, 7, 8, and 9 of Plaintiff's Request for Judicial Notice.  Although Plaintiff correctly indicates that they are public

1    records, the Court finds these documents inappropriate for judicial notice.

2    Senator Carl Levin's statement (Exhibit 5) sets forth thoughts and opinions that

3    are "subject to reasonable dispute" and are therefore inappropriate for judicial

4    notice.  *See Casteneda v. Saxon Mortgage Servs. Inc.*, 687 F. Supp. 2d 1191,

5    1196 (E.D. Cal. 2009) (refusing to take judicial notice of article that "expresses

6    opinions of the author that may reasonably be questioned").  The documents

7    within Exhibits 7, 8, and 9 provide information about the FDIC's responsibility

8    to creditors of failed banks.  This generalized information is not relevant to the

9    dispute in this case, as it does not explain the role of the FDIC with respect to its

10   receivership for WaMu specifically.  (Def. Opp'n to Pl. RJN 4.)  Because

11   Plaintiff fails to show the relevance of Exhibits 7, 8, and 9 to this case, judicial

12   notice of the documents is improper.  *See Great Basin Mine Watch v. Hankins*,

13   456 F.3d 955, 975–76 (9th Cir. 2006) (finding judicial notice improper where the

14   documents were unnecessary and irrelevant to the claims at issue).

15          Accordingly, the Court GRANTS Plaintiff's Request for Judicial Notice as

16   to Exhibits 1–4, 6, and 10, and DENIES Plaintiff's Request for Judicial Notice as

17   to Exhibits 5, 7, 8, and 9.

18   **B.     Collateral Estoppel**

19          In its Motion, Defendant argues that Plaintiff lacks standing to interpret or

20   enforce the PAA and should not be permitted to use the language of the PAA to

21   confer standing on itself or create privity of contract with Defendant where none

22   exists.  (Mem. 12–18.)  Plaintiff claims that the doctrine of collateral estoppel

23   precludes Defendant from raising this argument because the issue has already

24   been litigated in *290 at 71, LLC v. JPMorgan Chase Bank*, No A-09-CA-576-SS,

25   2009 WL 3784347 (W.D. Tex. Nov. 9, 2009).[1]  (Opp'n 10.)

26

27   ───────────────

28          [1]  In *290 at 71, LLC*, the district court granted summary judgment in favor of
     a lessor of real property, holding that the subject lease wholly transferred to JPMC

1    "Collateral estoppel, or issue preclusion, prevents parties from relitigating

2    an issue of fact or law if the same issue was determined in prior litigation."

3    *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1114 (9th Cir. 1999) (citing

4    *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988)).  "[O]ffensive use

5    of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant

6    from litigating an issue the defendant has previously litigated unsuccessfully in

7    an action with another party."  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326

8    n. 4 (1979).

9        A plaintiff may invoke offensive collateral estoppel when:

10
11           (1) there was a full and fair opportunity to litigate the issue in
             the previous action;
             (2) the issue was actually litigated in that action;
12           (3) the issue was lost as a result of a final judgment in that
             action; and
13           (4) the person against whom collateral estoppel is asserted in
             the present action was a party or in privity with a party in the
14           previous action.

15   *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992).

16       Although the doctrine of collateral estoppel serves both to protect litigants

17

18   _____

19   under the same PAA at issue here. *290 at 71, LLC*, 2009 WL 3784347 at *5.  As here,
     JPMC argued that the lessor lacked standing to enforce the PAA because the lessor
20   was "neither a party to the agreement nor in privity with the parties."  *Id*. at *4.  The
     Texas court explained that a finding that Plaintiff lacked standing to interpret the PAA
21   would be "an ironic barrier to Plaintiff's argument," because "if Plaintiff is correct in
     its interpretation of the PAA, then Plaintiff is in privity with [JPMC]."  *Id*.  According
22   to the court, "[t]he vehement arguments of the FDIC and [JPMC] that Plaintiff's case
     'fails at the threshold' because of Plaintiff's lack of standing to interpret an agreement
23   to which it is a stranger are a catch-22 that would keep Plaintiffs from asserting its
24   [sic] rights under the Lease against the new lessee even if a valid assignment of the
     Lease did occur."  *Id*.  The court rejected JPMC's contention that the plaintiff lacked
25   standing and proceeded to grant summary judgment in favor of the plaintiff.  *Id*. at *5.
26   The District Court certified the decision as an interlocutory decision on February 1,
     2010, and the Fifth Circuit Court of Appeals granted leave to appeal from the
27   interlocutory decision on March 8, 2010 (Reply RJN Ex. A; Def. RJN Ex. F.)
28

1   from the burden of relitigating an identical issue and to promote judicial
2   economy, the Supreme Court has stated that "*offensive* use of collateral estoppel
3   does not promote judicial economy in the same manner as defensive use does,"
4   and "may be unfair to a defendant." *Parklane Hosiery*, 439 U.S. at 329–30
5   (emphasis added). Consequently, the "preferable approach . . . is . . . to grant
6   trial courts *broad discretion* to determine when [offensive collateral estoppel]
7   should be applied." *Id*. at 331 (emphasis added); *see also Resolution Trust*
8   *Corp. v. Keating*, 186 F.3d at 1114. For the following reasons, the Court
9   declines to find Defendant's standing argument precluded.

10       The doctrine of collateral estoppel is only triggered when a final
11   adjudication of an identical issue is determined to be "sufficiently firm to be
12   accorded conclusive effect." *Luben Indus., Inc. v. United States*, 707 F.2d 1037,
13   1040 (9th Cir. 1982) (internal citations omitted). Factors supporting a
14   determination of "firmness" include "that the parties were fully heard . . . *that*
15   *the decision was subject to appeal or was in fact reviewed on appeal.*" *Id.*
16   (quoting Restatement (Second) of Judgments § 13 cmt. G) (emphasis in
17   original). The Court notes that the district court's decision in *290 at 71, LLC* has
18   been certified by the district court as an interlocutory decision and the Fifth
19   Circuit has granted an interlocutory appeal.[2] (Reply RJN Ex. A; Def. RJN Ex.
20   F.) However, in certifying the decision as interlocutory, the Texas district court
21
22   _____

23       [2] The Court recognizes that the pendency of appeal is not dispositive as to the
     finality of the judgment for purposes of collateral estoppel. *See Robi v. Five Platters,*
24   *Inc.*, 838 F.2d 318, 327 (9th Cir. 1988) (citing 18 C. Wright § 4433 at 305 for the
     proposition that "the preclusive effects of a lower court judgment cannot be suspended
25   simply by taking an appeal that remains undecided"). However, the Ninth Circuit has
26   approved a district court's refusal to invoke collateral estoppel based on an
     interlocutory opinion, because "[a]s an interlocutory order it is subject to free revision
27   by the court on its own motion or on motion of any party at any time before
28   judgment." *Luben Indus.*, 707 F.2d at 1040.

noted that the issue of standing was a "controlling question of law as to which there is substantial ground for difference of opinion." (Reply RJN Ex. A at 8 (internal citations omitted).) The district court stated that "it will be unable to enter any sort of final judgment in this case until the threshold issues are resolved." (*Id.*) In addition, the court noted that there were "at least seven cases pending in the Fifth Circuit which would be affected . . . by the outcome of the appeal." (*Id.* at 5). The Court finds the district court's interlocutory decision regarding whether a plaintiff who is not a third-party beneficiary has standing to enforce a PAA between the FDIC and an assuming bank is not "sufficiently firm" to be accorded preclusive effect.

In addition, "[i]ssue preclusion has never been applied to issues of law with the same rigor as issues of fact." *Segal v. Amer. Tel. & Tel. Co.*, 606 F.2d 842, 844 (9th Cir. 1979); *see also Af-Cap Inc., v. Chevron Overseas (Congo) Ltd*, 475 F.3d 1080, 1086 (9th Cir. 2007). The Supreme Court has stated that "[w]here . . . a court in deciding a case has enunciated a rule of law, the parties in a subsequent action upon a different demand are not estopped from insisting that the law is otherwise, merely because the parties are the same in both cases." *United States v. Moser*, 266 U.S. 236 (1924). Invoking collateral estoppel on a question of law "would have the effect of precluding reargument of questions of law that would be open to challenge by other litigants." *Wilson v. RobertShaw Controls Co.*, 600 F. Supp. 671, 677 (N.D. Ind. 1985) (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4425 at 244 (1981)). Standing is a question of law. *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010). Moreover, the Texas district court acknowledged that the issue of standing is a "purely legal issue[] . . . for which the facts were entirely undisputed." (Reply RJN Ex. A at 4–5.) The Court finds that non-party plaintiff's standing to enforce a PAA between the FDIC and an assuming bank is a question of law that has not been addressed by the Supreme Court or the

1   Federal Courts of Appeals.  Consequently, the Court declines to apply the

2   doctrine of collateral estoppel to bar Defendant's standing argument.

3   **C.      Standing**

4          The Ninth Circuit has recognized that "standing is a threshold question

5   which . . . must [be] resolve[d] before proceeding to the merits."  *L.A. County*

6   *Bar Ass'n v. Eu*, 979 F.2d 697, 700 (9th Cir. 1992); *see also Warth v. Seldin*,

7   422 U.S. 490, 517–18 (1975).

8          In order to succeed on a breach of lease claim, a plaintiff must establish

9   the existence of a valid contract between plaintiff and defendant.  *Gold v.*

10  *Gibbons*, 178 Cal. App. 2d 517, 519 (1960).[3]  The parties do not dispute that

11  neither Plaintiff nor Defendant were signatories to the Oakdale and Plummer

12  leases.  (FAC ¶¶ 11, 19; Mem. 12.)  As a result, Plaintiff can only maintain a

13  cause of action for breach of lease by showing that JPMC assumed the subject

14  leases under the PAA.  (Mem. 12.)  Plaintiff alleges that the Oakdale and

15  Plummer leases were not for "Bank Premises" within the meaning of the PAA,

16  and consequently, that JPMC did not have an option to assume, but in fact

17  automatically assumed the leases upon signing the agreement, creating privity of

18  contract between GE and JPMC.  (Opp'n 7–9.)  However, this allegation is

19  based upon Plaintiff's interpretation of the PAA, a contract to which Plaintiff is

20  neither a party nor an intended beneficiary.  Under California law, only actual

21  parties to an agreement or intended third-party beneficiaries to an agreement can

22  claim the benefit of a contract.  *Gordon Bldg. Corp. v. Gibraltar Sav. & Loan*

23  *Ass'n*, 247 Cal. App. 2d 1, 8 (1966).  "If the parties to the contract had no

24  intention to benefit a third party, that third party has *no rights* under the

25  contract."  *Britton v. Co-Op Banking Grp.*, 4 F.3d 742, 745 (9th Cir. 1993)

26

27          [3] Because this action was brought in federal district court under diversity
    jurisdiction, the substantive law of California, the forum state, controls.  *See Vestar*

28  *Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001).

1    (emphasis added).  Here, the PAA explicitly disclaims any intention to benefit

2    third parties, stating that the "obligations and responsibilities" laid out in the

3    terms of the agreement "are for the sole and exclusive benefit of the Receiver,

4    the Corporation and the Assuming Bank and for the benefit of no other Person."

5    (Def. RJN Ex. B § 13.5 at 45.)  Thus, Plaintiff is neither a party to the PAA nor

6    an intended beneficiary of the agreement between JPMC and the FDIC.  As

7    such, Plaintiff has no legal right to enforce its own interpretation of the PAA in

8    order to create privity with Defendant.[4]

9        Were the Court to hold that Plaintiff has standing to interpret and enforce

10   the PAA, the substantive dispute regarding the nature of the leases would be a

11   foregone conclusion.  The only way for the Court to find privity between JPMC

12   and GE is to find that the leases were not "Bank Premises" and were transferred

13   outright to JPMC by the terms of the PAA.  In other words, finding that Plaintiff

14   has standing to sue JPMC is tantamount to deciding the case on its merits, since

15   both issues turn on whether the leases constitute "Bank Premises" subject to

16   Section 4.6 of the PAA.  Plaintiff's request that the Court confer standing where

17   none is apparent is untenable.  The Court finds that Plaintiff lacks standing to

18   enforce or interpret the terms of Defendant's agreement with the FDIC and

19

20

---

21       [4] A similar attempt by a plaintiff to interpret the terms of a contract to which

22   it was not a party in order to create privity for purposes of standing was rejected in

23   *In re Amer. Home Mortgage, Holdings, Inc.,* 390 B.R. 120, 137–38 (Bankr. D. Del.
     2008).  The plaintiff argued that the contract to which it was *not* a party expressed an

24   intent to integrate a contract to which plaintiff *was* a party, thus creating standing for
     plaintiff to sue on the first contract despite its non-party status.  The court explained

25   that "[t]o the extent that plaintiffs are proposing that all contracts vaguely relating to

26   the same deal should be read together in spite of explicit language to the contrary in
     those contracts, so that a party to only one of the contracts can willy-nilly enforce

27   provisions of the other contract, that argument has absolutely no support in contract

28   law."  *Id.*

1    therefore has no claim against Defendant for breach of lease.[5]

2                                       **IV.**

3                                 **CONCLUSION**

4          For these reasons, the Court GRANTS Defendant's Motion (Docket No.

5    13) and dismisses Plaintiff's Amended Complaint.  Recognizing that Plaintiff

6    has had an opportunity to file an amended complaint and still fails to state a

7    claim for relief, the Court finds that the FAC could not be saved by amendment,

8    and the dismissal of the amended complaint is with prejudice.  *See Livid*

9    *Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005)

10   (finding denial of leave to amend improper unless no amendment could save the

11   complaint); *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)

12   (explaining that the court's discretion to deny leave to amend is decidedly

13   broader where the plaintiff has previously filed an amended complaint).

14   IT IS SO ORDERED.

15   Dated: July 7, 2010

16   _____

17   Honorable Jacqueline H. Nguyen
     UNITED STATES DISTRICT COURT

18

19

20

21

22

23

24

25          [5] The Court notes that dismissal of this lawsuit will not foreclose Plaintiff from

26   seeking recovery on its breach of lease claims.  On April 5, 2010, Plaintiff filed suit
     against the FDIC regarding the properties.  (Def. RJN Ex. D.)  The First Circuit has
27   held that the FDIC is the proper party in a suit regarding liabilities retained by the
     FDIC under the PAA.  *See Yeomalakis v. FDIC*, 562 F.3d 56, 60 (1st Cir. 2009).
28